# KEOKUK AND HAMILTON BRIDGE COMPANY *v.* ILLINOIS.

**ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.**

No. 26. Submitted November 15, 1899. — Decided January 8, 1900.

The boundary line between the States of Illinois and Iowa is the middle of the main navigable channel of the Mississippi River; but whether in assessing taxes in Illinois on a bridge running from one State to the other, in crossing that bridge the dividing line was improperly located, is a question of fact the finding of which by a state court is not reviewable here.

The same may be said concerning the contention as to whether the bridge was assessed at more than its value and not at the same proportion of its value as other property was.

The tax on the capital stock was not a tax on franchises conferred by the Federal government, but on those conferred by the State, and as such is not open to objection here.

The tax was not a tax on interstate commerce.

As to the objection that the entire capital stock was assessed by the state board of equalization, it is enough to say that the question that the action of that board was in violation of the Constitution of the United States, except so far as it was claimed to be an interference with interstate commerce, was not raised, and therefore cannot be considered here for the first time.

No opinion is intimated on the contention that the judgment was erroneous because the assessment, in effect, included the entire capital stock of plaintiff in error as a consolidated corporation.

THE case is stated in the opinion of the court.

*Mr. Walter D. Davidge* and *Mr. Walter D. Davidge, Jr.,* for plaintiff in error.

*Mr. Edward C. Akin* and *Mr. O. F. Berry* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This is a writ of error to review the judgment of the Supreme Court of Illinois affirming a judgment of the county court of Hancock County, in that State, for delinquent taxes assessed against the Keokuk and Hamilton Bridge Company for the year 1894.

The Keokuk and Hamilton Bridge Company was incorporated by an act of the general assembly of the State of Illinois in 1857, with power to build, maintain and use a bridge for railroad and other purposes over the Mississippi River from or near the town of Hamilton, in the county of Hancock, to Keokuk, in the State of Iowa, and was authorized to connect the bridge by railroad or otherwise with any railroad or railroads terminating thereat or approximately thereto, and to consolidate with any railroad or other company or companies in Illinois or any other State. A similar corporation was organized under the laws of the State of Iowa, and the two corporations consolidated with the main office at Keokuk.

Authority to construct and maintain the bridge was granted the two companies by the act of Congress of July 25, 1866, c. 244, 14 Stat. 244.

The record discloses that the company objected to the assessment of its tangible property as made by the assessor of the township in which the Illinois end of the bridge was situated, and applied to the township board of review for a reduction, protesting that the property was overvalued; "that the Fourteenth Amendment to the Constitution of the United States has been violated, in that equal justice and protection to property of the said bridge company has been denied;" "that the property assessed and described by the assessor lies partly in the State of Iowa and is not subject to taxation in Illinois;" etc. The board of review denied the relief asked, and the bridge company appealed to the board of supervisors of Hancock County, which also refused to change the assessment. The collector of Hancock County then applied to the county court, at its May term 1895, for judgment on the delinquent tax list, including the assessment against the bridge company, to which the company filed its objections, rehearsing the proceedings which had been theretofore taken, the objections made, and the evidence adduced. Before a hearing on these objections was had, the parties stipulated that the collector might "insert in his application for judgment the capital stock tax for the year 1894 levied by the state board of equalization against said company," which was done.

The bridge company thereupon filed its objections to any judgment for the capital stock tax, as follows :

"Objections by 'the Keokuk & Hamilton Bridge Company' to judgment against its bridge and approach.

"The original objections filed to said May term covering the application as there made.

"The application was amended in June by adding claims for capital stock tax of 1894, $1029.90.

"This objection is to the proposed judgment against said property for said claimed tax on the capital stock of said company —

"1st. Because said bridge company is a consolidated corporation of the States of Illinois and Iowa, one half in each of said States, and its entire business is that of interstate commerce, and any tax thereon is a tax upon such

interstate commerce and is without authority of law and void.

"2d. Such claimed capital stock tax is levied upon the whole capital stock, when only one half thereof, if any, is assessable in Illinois.

"3d. The only tax assessable against said property is upon its tangible property in Illinois.

"4th. Said pretended assessment of capital stock is wholly void because not made in the manner required by law nor according to the rules of the state board of equalization."

Considerable evidence was introduced, including the proceedings of the state board of equalization, from which it appeared that the capital stock of the bridge company was returned at one million dollars; that the total amount of its indebtedness except for current expenses, and excluding from such expenses the amount paid for the purchase or improvement of property, was one million dollars, with unpaid interest thereon amounting to nine hundred thousand dollars; that the assessed valuation of lands and structure was $218,000; and that the state board of equalization placed the valuation for assessment of capital stock at $30,080. The tax on the tangible property was $2708.61, and on the capital stock $1019.17. Judgment was rendered by the county court for those amounts and interest. From this judgment the case was carried on appeal to the Supreme Court, and there affirmed.

Among the errors assigned in that court were that "the court erred in overruling defendant's (appellant's) objections to the rendition of judgment of the capital stock tax (so-called) and rendering judgment thereon. Among the reasons for said error are the following:

"*a.* Said capital stock tax is a tax on personal, not on real, property, and is chargeable only at the place of the main office and place of business of defendant (appellant) — Keokuk, in the State of Iowa — and is made in violation of the rights of defendant (appellant), contrary to the laws regulating commerce between the States and contrary to the Constitution and laws of the United States.

"*b.* If any part of said capital stock of defendant (appel-

lant) is taxable in Illinois, it can only be that portion thereof that would correspond to the length of the bridge in Illinois as compared to the whole length of bridge, represented by said capital stock — not exceeding one half of said stock — yet the judgment is rendered for the tax assessed against the whole of the capital stock of defendant (appellant) as though all was located in Illinois;" that the judgment was against the evidence as to the length of the bridge in Illinois; and that the court ignored the act of Congress fixing the western boundary of Illinois.

In the opinion of the Supreme Court of Illinois, *Keokuk & Hamilton Bridge Co.* v. *The People,* 167 Illinois, 15, it is said : " The grounds of reversal are, first, the assessments were fraudulently made; second, the whole of the capital stock is assessed in this State, whereas an undivided half of it is taxable in Iowa; third, the judgment is upon an assessment upon a part of appellant's bridge not in the State of Illinois, but in the State of Iowa. The facts upon which the first two grounds are based are substantially the same as those upon which similar objections were urged in cases between the same parties in 145 Ill. 596, and 161 Id. 132 and 514, and are disposed of adversely to the appellant by those decisions."

The last point was disposed of on the ground that the county court was justified on the evidence in finding that no part of the bridge assessed was in the State of Iowa.

In *Keokuk & Hamilton Bridge Company* v. *The People,* 145 Illinois, 596, it was held that when the middle of a navigable river becomes the boundary line between two States, the middle of the current or channel of commerce will be regarded as the boundary line; that an assessor in Illinois in assessing a bridge over a navigable river forming the boundary of the State for the purpose of taxation, has no right to assess any part of such bridge that is located beyond such boundary line; and that unless the property has been fraudulently assessed more than its fair cash value, the courts cannot interfere with the action of the assessor. The judgment in that case was reversed because the assessor had assessed several hundred

feet of the bridge as in Hancock County, Illinois, which was located beyond the boundary line of the State.

In *Keokuk &c. Bridge Co.* v. *People*, 161 Illinois, 132, it was ruled that in fixing the value for taxation the assessor acts judicially, and the courts cannot revise his assessment on the mere ground of erroneous valuation; that on an application for judgment for delinquent taxes, it may be shown that the tax is unauthorized by law, or is assessed on property not subject to taxation, or that the property has been fraudulently assessed at too high a rate; that the capital stock of a corporation formed by the consolidation of corporations of different States is properly taxable in one of said States so far as the corporation of that State is concerned; that the kind of property denominated in the revenue law of Illinois "capital stock" does not mean shares of stock, either separate or in the aggregate, but designates the property of the state corporation subject to taxation, as a homogeneous unit partaking of the nature of personalty, and subject to the burdens imposed on it by the State of its creation. The judgment was reversed because the assessment was illegal in including a certain number of feet of the bridge which was located in the State of Iowa.

In *Same* v. *Same*, Id. 514, the rulings in the prior case so far as involved were affirmed.

The foregoing are the decisions to which reference is made in the opinion of the state Supreme Court in the case before us.

The errors assigned in this court are in substance that part of the bridge assessed was in the State of Iowa; that the bridge was assessed at more than its value, and not in the same proportion as other property was assessed; that no part of the capital stock was assessable, because a tax on it was in effect a tax on interstate commerce, and was a tax on franchises conferred by the Federal government; and that the whole of the capital stock was assessed, although one half of the bridge was located in the State of Iowa.

1. In *Iowa* v. *Illinois*, 147 U. S. 1, it was adjudged that the boundary line between the two States was "the middle of the main navigable channel of the Mississippi River." Where

that line divided the bridge was a question of fact, and it is not within our province to review the findings of the courts below in regard to the part assessed in Illinois.

2. For the same reason, the contention as to whether the bridge was assessed at more than its value, and not at the same proportion of its value as other property was, need not be considered. Perhaps we may properly add that we perceive no adequate ground to question the conclusion that the county court did not err in declining, on the evidence, to set aside the determinations of the boards of review sustaining the action of the assessor.

3. The tax on the capital stock was not a tax on franchises conferred by the Federal government, but on those conferred by the State, and as such not open to objection. *Central Pacific Railroad* v. *California*, 162 U. S. 91; *Henderson Bridge Company* v. *Kentucky*, 166 U. S. 150. Nor was the tax a tax on interstate commerce. This was so ruled in *Henderson Bridge Company* v. *Kentucky*, *supra*. It was there said:

" The company was chartered by the State of Kentucky to build and operate a bridge, and the State could properly include the franchises it had granted in the valuation of the company's property for taxation. *Central Pacific Railroad Company* v. *California*, 162 U. S. 91. The regulation of tolls for transportation over the bridge considered in *Covington & Cincinnati Bridge Company* v. *Kentucky*, 154 U. S. 204, presented an entirely different question.

" Clearly the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge. The fact that the tax in question was to some extent affected by the amount of the tolls received, and therefore might be supposed to increase the rate of tolls, is too remote and incidental to make it a tax on the business transacted." And see *Henderson Bridge Company* v. *Henderson City*, 173 U. S. 592, 622.

4. As to the objection that the entire capital stock was assessed by the state board of equalization, it is enough to say that the question that the action of that board was in violation of the Constitution of the United States, except so far as it was claimed to be an interference with interstate commerce, was not raised.

The Supreme Court of Illinois had repeatedly sustained the assessment on the whole capital stock as being an assessment on the capital stock of a corporation created by the State of Illinois. But in none of the cases in which the question of the validity of such capital stock assessments arose was the point considered that they were contrary to the Constitution of the United States.

In this case, and as to the tangible property, the objection was made that the assessment by the assessor of that tangible property was in contravention of the Fourteenth Amendment. But this was before the township board of review, and the board of supervisors, and had no relation to the assessment of capital stock, which by the laws of Illinois was dealt with solely by the board of equalization. In the county court, the objections made in the township board of review and in the board of supervisors as to the tangible property, were repeated as to that property, but the objections to the assessment on the capital stock were independent of and distinct from those, and raised no question in respect of the Constitution of the United States except that as to interstate commerce. And this was true as to the assignments of error in the state Supreme Court.

In *Dewey* v. *Des Moines*, 173 U. S. 193, it was held that where a Federal question is raised in the state courts, the party who resorts to this court cannot raise another Federal question, not connected with it, which was not raised in any of the courts below.

To justify our taking jurisdiction, the Federal question must be specially set up or claimed in the state court; the party must have the intent to invoke for the protection of his rights the Constitution or some statute or treaty of the United States, and such intention must be declared in some unmis-

takable manner. *Oxley Stave Company* v. *Butler County*, 166 U. S. 648. " In other words, the court must be able to see clearly from the whole record that a provision of the Constitution or act of Congress is relied upon by the party who brings the writ of error, and that the right thus claimed by him was denied. . . . Although no particular form of words is necessary to be used in order that the Federal question may be said to be involved, within the meaning of the cases on this subject, there yet must be something in the case before the state court which at least would call its attention to the Federal question as one that was relied on by the party, and then, if the decision of the court, while not noticing the question, was such that the judgment was by its necessary effect a denial of the right claimed or referred to, it would be sufficient. It must appear from the record that the right set up or claimed was denied by the judgment, or that such was its necessary effect in law. . . . It is not enough that there may be somewhere hidden in the record a question which, if raised, would be of a Federal nature. *Hamilton Company* v. *Massachusetts*, 6 Wall. 632. In order to be available in this court some claim or right must have been asserted in the court below by which it would appear that the party asserting the right founded it in some degree upon the Constitution or laws or treaties of the United States. In such case, if the court below denied the right claimed, it would be enough; or if it did not in terms deny such right, if the necessary effect of its judgment was to deny it, then it would be enough. But the denial, whether expressed or implied, must be of some right or claim founded upon the Constitution or the laws or treaties of the United States which had in some manner been brought to the attention of the court below. The record shows nothing of the kind in this case. A claim or right which has never been made or asserted cannot be said to have been denied by a judgment which does not refer to it. *Hamilton Company* v. *Massachusetts, supra.* A point that was never raised cannot be said to have been decided adversely to a party, who never set it up or in any way alluded to it. Nor can it be said that the

necessary effect in law of a judgment, which is silent upon the question, is the denial of a claim or right which might have been involved therein, but which in fact was never in any way set up or spoken of." 173 U. S. 198, 199, 200.

We are confined then to the only Federal questions which this record presents, and in disposing of these, as we have, no opinion is intimated on the contention that the judgment was erroneous because the assessment, in effect, included the entire capital stock of plaintiff in error as a consolidated corporation.

*Judgment affirmed.*